UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
EASTERN FINANCIAL CORPORATION,

                            Plaintiff,                    04 Civ. 8112 (RPP)

           - against -                    **OPINION AND ORDER**

JSC ALCHEVSK IRON AND STEEL WORKS
and INDUSTRIAL UNION OF DONBASS,

                            Defendants.
----------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On June 7, 2007, Defendant JSC Alchevsk Iron and Steel Works ("Alchevsk") appeared specially and moved to set aside the default judgment entered against it by this Court on May 13, 2005 for $1,411,707.00 plus prejudgment interest in the amount of $921,138.81 based on fraud on the Court; and it moved to dismiss the complaint filed against it by Plaintiff Eastern Financing Corporation ("EFC") on October 15, 2004. In the motion to dismiss, Defendant claimed, *inter alia*, that this Court lacks personal jurisdiction over Alchevsk, a Ukrainian corporation. On June 24, 2008, this Court vacated the default judgment entered against Defendant Alchevsk, finding that the judgment was procured by fraud on the Court. See Eastern Financing Corp. v. JSC Alchevsk Iron & Steel Works, 2008 U.S. Dist. LEXIS 48640 (S.D.N.Y. 2008). The Court confined its opinion and order to the issue of fraud on the Court and to vacating the default judgment; the Court expressly did not reach Alchevsk's claim that this Court does not have personal jurisdiction over Defendant. Id. at *4, n.1.[1]

---

[1] The original complaint did not disclose: (1) that Eastern Financing Corporation was an assignee as opposed to a party to the Contract; (2) the Ukrainian arbitration provision; or (3) a copy of the Contract.

Subsequently, Plaintiff Eastern Financing Corporation ("EFC") filed an amended complaint on July 17, 2008 (the "Amended Complaint"), seeking (1) the entry of a U.S. judgment against Defendants Alchevsk and its parent company, Defendant Industrial Union of Donbass ("ISD"), pursuant to CPLR Article 53 based on the January 22, 2004 Resolution of the Economic Court in the Lugansk Region of Ukraine (the "Bankruptcy Court"); or, alternatively, (2) the entry of a U.S. judgment against Defendants Alchevsk and ISD for breach of the Amicable Agreement associated with that Resolution, dated December 25, 2003. (Amd. Compl. ¶¶ 23-27.)

Before the Court is Defendant Alchevsk's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and because both of Plaintiff's claims are time-barred.[2]  For the reasons that follow, Defendant's motion to dismiss for lack of personal jurisdiction is granted.[3]

I. JURISDICTIONAL FACTS[4]

The following facts were found by the Court in its prior opinion, Eastern Financing Corp. v. JSC Alchevsk Iron & Steel Works, 2008 U.S. Dist. LEXIS 48640 (S.D.N.Y. 2008) (the "Opinion"), after an evidentiary hearing, are undisputed, or are alleged in Plaintiff's amended complaint and affidavit.  The Court accepts them as true for the purposes of resolving this jurisdictional dispute.  See Hoffritz For Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 56-57 (2d Cir. 1985).

---

Disclosure of these facts would have alerted the Court that a question of personal jurisdiction over Defendant existed.

[2] A review of the docket in this case shows that ISD has not been served in this action with a summons or with the Amended Complaint, and, therefore, ISD does not appear before the Court on Defendant Alchevsk's motion to dismiss.

[3] Because the Court finds that jurisdiction over Defendant Alchevsk is lacking, the Court does not reach the merits of the motion to dismiss for failure to state a claim.

[4] Extensive factual findings relevant to this case were made in this Court's prior opinion.  See Eastern Financing Corp. v. JSC Alchevsk Iron & Steel Works, 2008 U.S. Dist. LEXIS 48640 (S.D.N.Y. 2008).

Plaintiff EFC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of New York. (Am. Compl. ¶ 4.) Defendant Alchevsk is a Ukrainian joint stock company, with offices in the town of Alchevsk, Ukraine. (Am. Compl. ¶ 5.) Alchevsk does not have, and has never had, any offices, banking or other accounts, property, or any other assets in the United States, and does not engage in banking or other financial activity in the United States. (Declaration of Alla Abramtseva, dated May 25, 2007 ("Abramtseva Decl.") ¶ 9.) Defendant ISD, Alchevsk's parent company, is a Ukrainian joint stock company, with offices in the town of Donetsk, Ukraine. (Am. Compl. ¶ 6.) Alchevsk and ISD are, and at all relevant times have been, manufacturers of metal products, such as pig iron, heavy sections, plates, and steel billets. (Am. Compl. ¶ 8.)

In 1995, the then General Manager of Alchevsk, Mr. Evgeniy Mironov, came to New York City to meet with Mr. Sam Kislin, the principal of EYA Davidson Trading Establishment ("EYA Davidson"), a Liechtenstein trust. (Am. Compl. ¶ 9.) At that time, Mr. Mironov proposed a business venture, and he and Mr. Kislin thereafter negotiated and verbally agreed to the terms of such a venture. (Id.; Declaration of Sam Kislin, dated September 29, 2008 ("Kislin Decl.") ¶ 9.) On August 2, 1995, a contract (the "Contract") was entered into between Alchevsk and EYA Davidson, pursuant to which EYA Davidson was to supply raw materials to Alchevsk, such as coking coal and ferro ore for the production of various steel products. (Am. Compl. ¶ 10.) The contract was drafted by Vladimir Lembert, a representative of EYA Davidson located in Ukraine (Kislin 11/20/07 Tr. at 94-95), written in Russian, executed by both parties in Ukraine, and all deliveries of goods or materials under the contract were to take place in Ukraine.

(Abramtseva Decl. ¶¶ 11-12; Abramtseva Decl. Ex. B; Eastern Financing Corp., 2008 U.S. Dist. LEXIS 48640 at *3.)  Section 6 of the contract states:

> 16.1.   All disputes arising in connection with the performance of the present Contract, if not settled amicably, shall be submitted for consideration and final resolution by the International Commercial Arbitration Court with the Ukrainian Chamber of Commerce and Industry in Kiev as prescribed by its Rules of Procedure.  The judgments made by such Court shall be final and binding for both parties.

(Abramtseva Decl., Ex. B, ¶ 6; Eastern Financing Corp., 2008 U.S. Dist. LEXIS 48640 at *3-*4.)

In late 1996, Mr. Mironov returned to New York City to meet with Mr. Kislin regarding the difficulty Alchevsk was having in meeting its obligations.  (Kislin Decl. ¶ 12.)  By 1997, although Alchevsk had partially satisfied its obligations to EYA Davidson under the Contract, there was an outstanding indebtedness owned by Alchevsk to EYA Davison in the amount of $1,411,706.96, which the parties agreed could be satisfied through Alchevsk's delivery of steel plates.  (Am. Compl. ¶ 12.)  When no such delivery was made by Alchevsk, in April 1997, EYA Davidson invoked the arbitration clause contained in Section 6 of the Contract and, through counsel, commenced an arbitration proceeding against Alchevsk, based upon the outstanding debt, in the International Commercial Arbitration Court of the Ukraine (the "ICAC").  (Am. Compl. ¶¶ 13-14.)  During the course of this arbitration proceeding, on April 15, 1997, EYA Davidson underwent statutory liquidation, and its rights under the Contract were assumed by its parent entity, Eastern Financial Holding, Ltd. ("EFHL"), a British Virgin Islands corporation controlled by EYA Davidson's principal, Mr. Kislin.  (Am. Compl. ¶ 15.)  On January 16, 1998, ICAC found that EFHL had not presented adequate proof of its role as EYA Davidson's successor, and ICAC dismissed the arbitration proceeding.  (Am.

4

Compl. ¶ 16.)

On September 10, 1997, a bankruptcy proceeding had been initiated by Alchevsk in the Bankruptcy Court.  On December 15, 1997, EFHL filed a claim with the Bankruptcy Court for the amount of the debt, and on June 10, 1998, the Bankruptcy Court ruled that EFHL's claim as successor in interest to EYA Davidson was valid.  (Am. Compl. ¶¶ 17-18.)

On or about December 25, 2003, an "Amicable Agreement" was entered into between Alchevsk and a committee of its creditors in the bankruptcy proceeding, and EFHL's claim for the debt was approved.  Under the provisions of the Amicable Agreement, Alchevsk agreed to pay 15% of EFHL's claim for the amount of the debt by March 1, 2004, with the balance of the claim to be satisfied by securities issued by ISD. (Am. Compl. ¶ 19.)  The Bankruptcy Court approved the Amicable Agreement on January 22, 2004.  (Am. Compl. ¶ 20.)  In the Amicable Agreement, EFHL was correctly listed as a creditor of 4th priority with an approved claim of $1,411,706.96, and with the postal address of one of its agents "c/o Moore Stephens Service SAM, L'Estoril, Blok C 31, Avenue Princess Grace, MC 98000, Monaco." (Abramtseva Decl., Ex. H at addendum #1; Eastern Financing Corp., 2008 U.S. Dist. LEXIS 48640 at *9.)

To date, neither Alchevsk nor ISD has satisfied any part of their obligations to EFHL.  (Am. Compl. ¶ 21.)

On March 1, 2004, EFHL assigned to EFC all of its rights, title, and interest in and with regard to any and all claims that EFHL may have had against Alchevsk.  (Am. Compl. ¶ 22.)

5

II.  DISCUSSION

As a general rule, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc); see also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). In order to determine whether a basis exists to exercise personal jurisdiction over a defendant, a district court is required to apply a two-part analysis. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). First, the court must look to the law of the forum state, here New York, to determine whether there is jurisdiction over the defendant. Id. Second, the court must determine "whether an exercise of jurisdiction under these laws is consistent with federal due process requirement." Id.

When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). Where a "court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Proof of jurisdiction presented to the court must be construed in the manner "most favorable to plaintiff and all doubts are resolved in its favor." Cutco Industries v. Naughton, 806 F.2d 361, 364-66 (2d Cir. 1986); see also Credit Lyonnais Sec. (USA) v. Alcantra, 183 F.3d 151, 154 (2d Cir. 1999) (on a motion

6

to dismiss, the court must accept the plaintiff's version of the facts upon which jurisdiction is predicated; however, the plaintiff must later "still prove the jurisdictional facts by a preponderance of the evidence, either at an evidentiary hearing or at trial").

> a.  Personal Jurisdiction over Alchevsk cannot be exercised under New York's Long-Arm Statute, CPLR § 302

Section 302(a)(1) of the New York long-arm statute provides that a court may exercise personal jurisdiction over any foreign defendant who "transacts any business within the state."[5] N.Y. Civ. Prac. L. & R. § 302(a)(1). For a court to exercise jurisdiction under this provision, the claim must "arise out" of the transaction of business within the state. Hoffritz For Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58-59 (2d Cir. 1985).

In order to determine whether personal jurisdiction is appropriate under CPLR § 302(a)(1), a court must consider the totality of the circumstances related to the party's contacts with New York. See Cutco Industries, 806 F.2d at 365 ("No single event or contact connecting defendant to the forum need be demonstrated; rather, the totality of all defendant's contacts with the forum must indicate that the exercise of jurisdiction would be proper."). In 1996, the Second Circuit summarized factors that the court should consider when making the determination of whether a defendant has transacted business in New York under CPLR § 302(a)(1):

> The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the

---

[5] Both parties agree that CPLR § 302(a)(1) is the only subsection of the long-arm statute possibly applicable in this case. (See Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Amended Complaint ("Pl.'s Mem."), pp. 8-10.)

7

> relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. Although all are relevant, no one factor is dispositive. Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances.

Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted).

Here, with respect to the first factor, Alchevsk did not have an "on-going contractual relationship with a New York corporation" since neither party to the Contract was a New York corporation. Id. EYA Davidson was a Liechtenstein trust and Alchevsk is a Ukrainian joint stock company. (Am. Compl. ¶¶ 5, 9.) It is undisputed that Alchevsk does not have, and has never had, any offices, banking or other accounts, property, or any other assets in New York—or anywhere in the United States. (Abramtseva Decl. ¶ 9.) Furthermore, the Contract was drafted by a representative of EYA Davidson located in Ukraine, written in Russian, executed by both parties in Ukraine, and all deliveries of goods or materials under the contract were to take place in Ukraine. (Kislin 11/20/07 Tr. at 94-95; Abramtseva Decl. ¶¶ 11-12; Abramtseva Decl., Ex. B; Eastern Financing Corp., 2008 U.S. Dist. LEXIS 48640 at *3.) The breach of the Contract by Alchevsk also took place in Ukraine. (Am. Compl. ¶¶ 10-14.) Moreover, there is no claim that Alchevsk has done business with any company controlled by Plaintiff since Alchevsk's breach of the Contract and EYA Davidson's initiation of arbitration proceedings in April 1997.

With respect to the third factor—the choice of law clause—while no choice of law provision appears in the Contract, a binding arbitration clause provides that all disputes arising in connection with the performance of the Contract "shall be submitted for consideration and final resolution by the International Commercial Arbitration Court

8

with the Ukrainian Chamber of Commerce and Industry in Kiev as prescribed by its Rules of Procedure. The judgments made by such Court shall be final and binding for both parties." (Abramtseva Decl., Ex. B, ¶ 6.) Furthermore, as the Court found in its prior Opinion, the Contract was governed by Ukrainian law. Eastern Financing Corp., 2008 U.S. Dist. LEXIS 48640 at *22 ("Alchevsk has submitted an unrebutted declaration by Dr. Irina Paliashvili, the President and Senior Counsel of the Russian-Ukrainian Legal Group, P.C. and an expert on Ukrainian law, stating that since the contract was entered into by both parties in Ukraine, and required performance in Ukraine, the contract was governed by Ukrainian law.").

The fourth factor favors Defendant here, as the contract did not provide for any notices or payments to be sent to New York; in fact, no New York corporation was a party to the Contract.

The only contacts with New York alleged by Plaintiff relate to the second factor: (1) a meeting which allegedly occurred in 1995 between the General Manager of Alchevsk and Mr. Kislin where negotiations which led to the Contract were discussed, and (2) a meeting between the same individuals years after the Contract was executed, regarding Alchevsk's difficulty in meeting its obligations under the Contract.[6] These contacts are insufficient to support jurisdiction under CPLR § 302(a)(1).

Only in the rarest of cases will New York courts compel a foreign defendant to answer a suit "in a jurisdiction with which they have the barest of contact." McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 383 (1967). In McKee, the New York Court

---

[6] Plaintiff's declaration references telephone calls with Alchevsk concerning the contract negotiations. (Kislin Decl. ¶ 9.) However, "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself." Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (internal quotations omitted).

9

of Appeals affirmed dismissal of an action for failure of jurisdiction under CPLR § 302, even where an underlying distributorship agreement was "made or at least negotiated" in New York; the goods were used by the plaintiff in New York; and a "high level" employee of the defendant came to New York to look into difficulties between plaintiff and plaintiff's customers. Id. In fact, the McKee court held that such contacts, "rather than being minimal, were so infinitesimal…that jurisdiction of the New York courts [could not] be sustained." Id. at 381.

Plaintiff has not cited any cases that show that, in circumstances similar to the case at bar, personal jurisdiction was executed. For example, Plaintiff relies on Indosuez International Finance B.V. v. National Reserve Bank, where the New York Court of Appeals found that jurisdiction was proper in a case where defendant was party to a group of contracts, some of which contained a forum selection clause requiring that the claims be litigated in New York. 98 N.Y.2d 238, 246-47 (2002). Here, no such forum selection clause exists. Moreover, the court in Indosuez found that the defendant maintained a bank account in New York City through which the payments required by the contracts were to be made. Because a New York bank had also been used to make such payments in prior similar transactions between the same parties, the court found that the parties developed a course of dealing. Id. at 247. Here, Alchevsk does not have a New York bank account, nor does the Contract require any payments or delivery of goods or services to be made in New York.[7] Further, there is no evidence of Alchevsk's

---

[7] Likewise, other cases cited by Plaintiff are distinguishable. See Alpha International, Inc. v. T-Reproductions, Inc., 2003 WL 21511957 (S.D.N.Y. 2003) (finding that personal jurisdiction was established where the defendant business used a website, a national magazine advertisement, and a direct mail campaign to sell merchandise to New York residents); People v. Concert Connection, Ltd., 211 A.D.2d 310 (2d Dep't 1995) (finding personal jurisdiction where the defendant concert ticket-seller contracted to sell tickets to New York residents, shipped tickets to New York residents, advertised in New York newspaper, and maintained two New York telephone numbers); World Film Services, Inc. v. RAI

10

engagement in a course of dealing in New York.

Considering all of the Agency Rent a Car Sys. factors, and examining the totality of the circumstances presented here, the Court is not persuaded that exercising personal jurisdiction over Alchevsk in this case is authorized by CPLR § 302(a)(1).  See Barrett v. TEMA Development, Inc., 463 F. Supp. 2d 423, 433 (S.D.N.Y. 2006) (holding defendant's contacts with New York, which included (1) entering into a contract with a New York resident, (2) attending a single meeting in New York where the contract was discussed, (3) holding a New York bank account, which was referenced in the contract, and (4) using a New York law firm to negotiate an investment deal outside of New York that allegedly arose out of the contract, were insufficient to confer personal jurisdiction over defendant pursuant to CPLR § 302(a)(1)).  To exercise personal jurisdiction over Alchevsk "would essentially expand the reach of CPLR § 302(a)(1) beyond persons who regularly and purposely transact business in New York to encompass those who merely enter into an isolated business relationship outside of New York" with a company whose principal is a resident of New York.  Id.

   b. Personal Jurisdiction over Alchevsk would violate Due Process

Even if Defendant Alchevsk were subject to New York's long-arm statute, exercise of jurisdiction under Section 302(a)(1) will comport with the due process guarantees only if "the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967) (quoting Hanson v.

---

Radiotelevisione Italiana S.p.A., 1999 WL 47206 (S.D.N.Y. 1999) (finding personal jurisdiction over a defendant where it maintained a bank account in New York, as well as a wholly owned subsidiary office in New York with six employees); Chew v. Dietrich, 143 F.3d 24 (2d Cir. 1998) (finding personal jurisdiction over a racing boat owner where a deceased plaintiff, represented by his estate, had been recruited for a round-trip voyage in Rhode Island and where he was to be returned to Rhode Island after the voyage).

Denckla, 357 U.S. 235, 253 (1958)).

To satisfy due process, a non-domiciliary must have sufficient "minimum contacts [with the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). Where the claim arises out of the defendant's contacts with the forum—as it does here—minimum contacts exist where the defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002).

Put differently, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)). Although the "unilateral activity" of a plaintiff or third party, or "random," "fortuitous" or "attenuated" contacts of a defendant will not support jurisdiction, jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Id. at 475 (internal citations omitted). In addition to the existence of a claim arising from purposeful forum-directed activity, the maintenance of the suit must not offend "traditional notions of fair play and substantial justice." Burger King, 471 U.S. at 476-78.

As discussed *supra*, at most, Alchevsk's contacts with New York consist of two meetings with Mr. Kislin. The Contract was not executed in New York, but rather in the Ukraine, all goods or materials under the Contract were to be delivered in the Ukraine,

12

the Contract provided for binding arbitration in the Ukraine, and neither party to the Contract was a New York corporation.  Here, Alchevsk has not "purposefully avail[ed] itself of the privilege of conducting activities in [New York], thus invoking the benefits and protection of its laws."  Id. at 474.  Under these circumstances, exercising personal jurisdiction over Alchevsk would offend traditional notions of fair play and substantial justice.  See id. at 476 n.18 (noting that single or occasional acts related to the forum are insufficient to establish jurisdiction when "their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum") (internal quotations omitted).

III. CONCLUSION

Accordingly, Defendant Alchevsk's motion to dismiss based on lack of personal jurisdiction is granted.

IT IS SO ORDERED.

Dated: New York, New York
       March **23**, 2009

                                        Robert P. Patterson, Jr.
                                        U.S.D.J.

15

*Copies of this Opinion and Order sent to:*

**Counsel for Plaintiff**

Kestenbaum, Dannenberg & Klein, LLP
104 West 40th Street, 20th Fl.
New York, NY 10018
By:  Jeffrey C. Dannenberg, Esq.
Tel:  212-486-3370
Fax:  212-486-3371


**Counsel for Defendant**

Greenberg Traurig, LLP
The MetLife Building
200 Park Avenue
New York, NY 10166
By:  Jeffrey R. Mann, Esq.
Tel:  212-801-9200
Fax:  212-801-6400